FULLER, D. B. A. ROBERT C. FULLER BUILDING CO., ET AL.,
APPELLANTS, V. DRENBERG ET AL., APPELLEES.

[Cite as Fuller v. Drenberg, 3 Ohio St. 2d 109.]

(No. 39098—Decided July 14, 1965.)

*Messrs. Clair & Wiles, Messrs. Parks & Eisele* and *Mr. Ebert Weidner*, for appellants.

*Messrs. Baker & Pollock* and *Mr. John C. Pollock*, for appellees.

KERNS, J. At the outset, and in view of the arguments of counsel, it should be stated with particularity that the single issue presented in this case is one of pleading: Whether the plaintiffs' second amended petition states a cause of action.

Although but one recovery is sought in the case, the plaintiffs have alleged three separate and distinct causes of action. The first cause of action seeks relief for breach of warranty; the second cause of action seeks rescission for mutual mistake; and the third cause of action proceeds upon the alternative theory of fraud.

It is fundamental that a general demurrer to any pleading

containing two or more causes of action may not be sustained if any one cause of action is well pleaded. 43 Ohio Jurisprudence 2d 203 and 213, Sections 185 and 199.

Hence, for the sake of clarity, we will discuss each cause of action separately in determining whether any of such causes of action will withstand the demurrer.

With reference to the first cause of action, the plaintiffs' reliance upon the contract is unavailing because the contract was merged in the deed when the deed was delivered and accepted without qualification, and, therefore, no cause of action upon the prior agreement thereafter existed. 54 Ohio Jurisprudence 2d 618, Section 70. At that point, the purchasers were limited to the express covenants of the deed. *Brumbaugh* v. *Chapman*, 45 Ohio St. 368. See, also, annotation, 38 A. L. R. 2d 1310; 3 Williston on Contracts (Rev. Ed.), 2057, Section 723.

The question remaining then is whether the concrete sewer line was an "incumbrance" within the scope of the warranties contained in the deed. In this regard, Section 6131.59, Revised Code, provides in part that "when an improvement consisting of a ditch, drain, or watercourse has become the outlet of agricultural drainage * * * it shall be deemed to be a public watercourse * * * and the public shall have and possess in and to such watercourse * * * the rights and privileges which relate to and pertain to natural watercourses * * *."

A natural watercourse which has been hidden from view by a covering of concrete has been held not to be an incumbrance within the usual provisions of a warranty deed containing a covenant against incumbrances. *Voytecek* v. *Peoples Savings Bank Co.*, 65 Ohio App. 118. In that case, the court relied heavily upon the case of *Kleinberg* v. *Ratett*, 252 N. Y. 236, 169 N. E. 289, which bears facts similar to the facts of the present case, and quoted directly therefrom as follows: " 'Superficial or subterranean watercourses, not the subjects of grant or prescription, are not legal incumbrances, since nature itself, rather than man's contrivance, is responsible for their origin.' "

In another case, where the pertinent facts bear a marked similarity to the facts of the present case, the Supreme Court of New Jersey decided as follows:

"We therefore conclude that the flow of this natural stream

or brook over the land conveyed is not an incumbrance within the meaning of that term in the deed of conveyance. The next question is: Does the artificial structure or brick work concealing the flow of the stream change its legal aspect? We fail to see on what legal principle the covering of a natural stream with brick can change its legal character. If it was not an incumbrance, as such, it could not be made so by covering it over with brick. This does not make it an easement nor an incumbrance. * * *" *Stanfield* v. *Schneidewind*, 96 N. J. 428, 115 A. 339. To the same effect, see *Bullis* v. *Schmidt*, 5 Wis. 2d 457, 93 N. W. 2d 476, where the seventh paragraph of the North Western Reporter headnotes states: "Existence of underground sewer and water pipes, extending across land conveyed to adjoining property, did not constitute an 'incumbrance' within meaning of covenant against incumbrances contained in deed, in absence of any easement for maintenance of such sewer and water connections across land conveyed, though removal of pipes in order to make intended use of land conveyed resulted in expense to grantees."

Based upon the allegations of the plaintiffs' petition, we are of the opinion that the described watercourse in the present case is not an easement or an incumbrance but is inseparably connected with an interest in the land. Accordingly, the petition will not support an action for a breach of covenant against incumbrances.

In their second cause of action, the plaintiffs proceed upon the theory that neither of the parties knew of the sewer; that both assumed that the lot was suitable for the construction of a house; and that this alleged mutual mistake rendered the *contract* voidable.

As heretofore noted, where the transaction relates to land, the unqualified acceptance of a deed operates as a discharge of the original contract. Hence, at this point, a rescission of the contract may not be decreed. The question, more specifically, is whether the deed might be set aside for mutual mistake. In this regard, the plaintiffs have alleged, in substance, in their second cause of action that the purchase agreement was conditioned on the issuance of a building permit; that the building permit was issued by the city of Willowick before delivery of

the deed to the plaintiffs; that the expense of detouring the sewer around the house will be approximately $2,200; and that defendants did not know of the existence of the sewer on said lot until plaintiffs discovered it.

In our opinion, conclusive proof of these allegations would furnish no ground for equitable relief. The sewer or watercourse is neither an easement nor an incumbrance. It is rather an inseparable part of the land, and a seller, without either actual or constructive notice, cannot reasonably be held responsible for the natural subterranean characteristics of land. Almost all land sales are accompanied by some conscious ignorance and uncertainty on the part of both vendors and vendees, but ignorance of a fact is not a mistake of fact because some fact must be in conscious existence to form the predicate for a mistake. Suppose, for example, that the plaintiffs, in excavating, discovered oil instead of water in its natural state. Would this entitle the defendants to rescission of the deed on the theory of mutual mistake?

In the case of *Crist* v. *Dice*, 18 Ohio St. 536, 542, this court adopted the following statement from Story's Equity Jurisprudence (2d English Ed.), Section 150, as follows:

"Where the fact is equally unknown to both parties, or where each has equal and adequate means of information, or where the fact is doubtful from its own nature * * * a court of equity will not interpose. * * * This rule will apply to all cases of sale of real estate, or personal estate, made in good faith, where material circumstances, affecting the value, are equally unknown to both parties. * * *"

In the case of *Wilkins* v. *Irvine*, 33 Ohio St. 138, an unrecorded written license was given for the laying and maintenance of water pipes. As between the vendor and purchaser of the land where the pipes were located, this court upheld a demurrer to a petition seeking rescission.

At the most, the allegations of the plaintiffs' second cause of action show a misapprehension as to the value of the lot for its intended purpose, and are not sufficient to support an action for cancellation or rescission of the deed.

In discussing the second cause of action briefly, we are not unaware that its allegations directly contradict the allegations

contained in the third cause of action. In attempting to plead mutual mistake, plaintiffs alleged unequivocally that defendants "did not know of the existence of the sewer on said lot until plaintiffs discovered it and notified them thereof." Then, in their third cause of action, plaintiffs, after incorporating the allegations of the first and second causes of action, state positively that the defendants "knew of the existence of the sewer on said lot."

Although the latter allegation of guilty knowledge was indispensable to the third cause of action, it is clearly inconsistent with the allegation contained in the second cause of action.

A plaintiff may, under our system of pleading, allege as many causes of action as he may have within the scope of the applicable statute. Section 2309.05, Revised Code. However, this statutory authority is subject to the condition, implied from the requirement in regard to verification, that such causes shall not be so repugnant that, if one be true, the other must be false. The pleading before us appears to be incapable of overcoming this condition. If the second cause of action is true, the third is false, and vice versa. The two are mutually destructive. Any attempt to prove one would disprove the other.

In *Pavey* v. *Pavey*, 30 Ohio St. 600, the syllabus states that "a defendant can be required to elect between which of several defenses he will proceed to trial, only where the facts stated therein are so inconsistent that, if the truth of one defense be admitted, it will necessarily disprove another." See, also, 43 Ohio Jurisprudence 2d 79, Section 71; 71 Corpus Juris Secundum 112, Section 42; 1 Corpus Juris Secundum 1215, Section 75 (d).

Although pleadings are ordinarily construed liberally in favor of the pleader as against demurrer, it is likewise fundamental that a pleading containing inconsistent allegations or causes of action must be construed against the pleader. 43 Ohio Jurisprudence 2d 64, Section 58.

It should not be implied that a good cause of action on the theory of fraud could not have been alleged by the plaintiffs under the facts and circumstances of this case. We hold merely that the third cause of action, as actually alleged in the pleading

now before us, is not good as against demurrer. See *State* v. *Western Union Telegraph Co.*, 154 Ohio St. 511.

It appearing that the judgment of the Court of Appeals affirming the order of the Court of Common Pleas is correct, its judgment is, therefore, affirmed.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and SCHNEIDER, JJ., concur.

KERNS, J., of the Second Appellate District, sitting for BROWN, J.